**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | |
|---|---|
| **"KS," "LC," "DP1," and "DP2" as the Surviving Minor Children of Daylyne Collins, Deceased, by Their Next Friend, PARIS COLLINS, and Paris Collins as Personal Representative of the ESTATE OF DAYLYNE COLLINS,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**OFFICER K'ASIA JONES, et al.,**<br><br>**Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   **CIVIL ACTION NO. 5:25-cv-451 (MTT)**<br>)<br>)<br>)<br>)<br>)<br>) |

## ORDER

Daylyne Collins was murdered by other inmates at Wilcox State Prison ("Wilcox") in April 2025. ECF 7 ¶¶ 22, 23. Plaintiffs assert an Eighth Amendment failure to protect, deliberate indifference claim against a correctional officer and several supervisory defendants. *Id.* ¶¶ 6–10, 29. Defendants move to dismiss. ECF 11. For the reasons explained below, the motion is **GRANTED in part** and **DENIED in part**.

### I.   BACKGROUND[1]

Collins was transferred to Wilcox after having altercations with a gang called the Goodfellas at Valdosta State Prison. ECF 7 ¶ 25. Collins continued to have issues with the Goodfellas after the transfer. *Id.* ¶ 14. On April 8, 2025, Collins was involved in a knife fight with another inmate. *Id.* ¶ 24. Defendant Lieutenant Jacob Krause witnessed

---

[1] The Court takes the following facts from the well-pleaded allegations in the amended complaint, construing all reasonable inferences in the light most favorable to Plaintiffs. *See FindWhat Inv'r Grp. v. FindWhat.com.*, 658 F.3d 1282, 1296 (11th Cir. 2011).

the fight but did not segregate Collins from the other inmate involved or from that inmate's gang affiliates following the altercation. *Id.* ¶¶ 24, 25. Thereafter, Collins became aware that certain gang factions, including the Goodfellas, were trying to harm him in his assigned dorm, G2. *Id.* ¶ 14.

On April 18, 2025, Collins, serving as an orderly, assisted Officer K'Asia Jones with a census count in the K building. *Id.* ¶ 13. Collins hid in the K building because he did not want to return to G2, where he faced threats on his life. *Id.* ¶ 14. Jones called for Collins, but Collins did not respond. *Id.* ¶ 15. Jones went to other dorms to continue the census count, but she eventually returned to the K building to search for Collins. *Id.* She found him hiding, visibly frightened and distressed. *Id.* ¶ 16. Collins told Jones that he was in serious trouble, and he expressed a firm belief that if he returned to G2, he would be killed. *Id.* ¶ 17. He said, "I am scared for my life," and asked to be placed in the J building for protective custody. *Id.* ¶¶ 18, 19. Standard operating procedures required Jones to take Collins to a security supervisor. *Id.* ¶ 19. The supervisor would then determine whether Collins should be placed in protective custody or in administrative segregation pending an investigation and housing decision. *Id.* But Jones was anxious to leave because her shift was supposed to have ended. *Id.* Ignoring Collins' pleas for his life and protocol, Jones returned Collins to G2. *Id.* ¶ 21. Collins' dead body was found the morning of April 20, 2025, the next time a count was made.[2] *Id.* ¶¶ 22, 23. He was not the first inmate to have died that year—nine inmates had died at Wilcox in the nine months before Collins' death. *Id.* ¶ 1.

---

[2] Counts were not being made as required due to short staffing. ECF 7 ¶ 23.

Plaintiffs assert an Eighth Amendment failure to protect, deliberate indifference claim against Jones and Lieutenant Krause for their alleged personal participation in violating Collins' Eighth Amendment right. *Id.* ¶¶ 9, 10. In addition, Plaintiffs assert an Eighth Amendment supervisory liability claim against the following security supervisors: Lieutenant Krause, Captain Newsome, Lieutenant Lott, and Lieutenant Mitchell. *Id.* ¶¶ 7–9. Plaintiffs also assert an Eighth Amendment supervisory liability claim against Warden Charles Mims. *Id.* ¶ 6.

## II. STANDARD

The Federal Rules of Civil Procedure require that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[3] Fed. R. Civ. P. 8(a)(2). To avoid dismissal pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when "the court [can] draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Factual allegations that are 'merely consistent with a defendant's liability' fall short of being facially plausible." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678).

---

[3] Plaintiffs submit an affidavit attached to their response to the motion to dismiss and ask the Court to convert the motion to dismiss into a motion for summary judgment. ECF 13 at 2–3. This likely was an effort to start discovery. "'[A] judge need not convert a motion to dismiss into a motion for summary judgment as long as he or she does not consider matters outside the pleadings.'" *Hagan v. Comm'r, Georgia Dep't of Corr.*, 2023 WL 5621895, at *5 (11th Cir. Aug. 31, 2023) (quoting *Harper v. Lawrence Cnty., Ala.*, 592 F.3d 1227, 1232 (11th Cir. 2010)). The Court does not consider matters outside the pleadings and declines to convert the motion to dismiss into a motion for summary judgment. The Court afforded Plaintiffs an opportunity to file a second amended complaint if Plaintiffs believed the affidavit added pertinent facts, but Plaintiffs declined to do so. ECF 17; 18.

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *FindWhat Inv. Grp.*, 658 F.3d at 1296 (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006)). But "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts. *Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314, 1321 (11th Cir. 2018).

The doctrine of qualified immunity "offers complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Scott v. City of Miami*, 139 F.4th 1267, 1274 (11th Cir. 2025) (citation modified). "Although qualified immunity provides government officials with a formidable shield, their entitlement to raise that shield is not automatic." *Est. of Cummings v. Davenport*, 906 F.3d 934, 940 (11th Cir. 2018). Rather, "the official bears the initial burden of raising the defense of qualified immunity by proving that he was acting within his authority." *Id*. "'Once discretionary authority is established, the burden then shifts to the plaintiff to show that qualified immunity should not apply.'" *Edwards v. Shanley*, 666 F.3d 1289, 1294 (11th Cir. 2012) (quoting *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291 (11th Cir. 2009)).

-4-

To overcome a qualified immunity defense, Plaintiffs must plausibly allege that (1) the facts, viewed in their favor, establish a constitutional violation; and (2) the defendants violated rights that were clearly established at the time of the alleged violation. *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019). This two-step analysis may be done in whatever order is deemed most appropriate for the case. *Lewis*, 561 F.3d at 1291 (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

Plaintiffs can show the illegality of the defendants' conduct was clearly established in one of three ways: (1) by pointing to a materially similar case decided by the Supreme Court, Eleventh Circuit, or relevant state supreme court at the time; (2) by identifying a broader, clearly established legal principle that applies to the facts of the case; or (3) by showing the conduct was so plainly unconstitutional that prior case law is unnecessary. *Stalley v. Cumbie*, 124 F.4th 1273, 1284 (11th Cir. 2024) (collecting cases).

### III. DISCUSSION

Defendants move to dismiss Plaintiffs' Eighth Amendment failure to protect, deliberate indifference claim. ECF 11. Under the Eighth Amendment, prison officials must "provide humane conditions of confinement . . . ensure that inmates receive adequate food, clothing, shelter, and medical care, and . . . 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan,* 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer,* 468 U.S. 517, 526–27 (1984)); *Helling v. McKinney*, 509 U.S. 25, 31–32 (1993). To state a failure to protect claim, Plaintiffs must plausibly allege: (1) a substantial risk of serious harm; (2) deliberate indifference to that risk; and

(3) causation. *Goodman v. Kimbrough*, 718 F.3d 1325, 1331 (11th Cir. 2013); *Bowen v. Warden Baldwin State Prison*, 826 F.3d 1312, 1320 (11th Cir. 2016).

"The first element of an Eighth Amendment claim—a substantial risk of serious harm—is assessed under an objective standard." *Lane v. Philbin*, 835 F.3d 1302, 1307 (11th Cir. 2016). To prevail, a plaintiff must allege "conditions that were extreme and posed an unreasonable risk of serious injury to his future health or safety." *Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019) (quoting *Lane*, 835 F.3d at 1307). In the failure-to-protect context, a plaintiff can make this showing by demonstrating either a "general threat" to inmates based on dangerous conditions in the prison or particular area of the prison, or by an individualized risk based on a "specific threat" to the prisoner. *Id.* at 1235; *see also Purcell ex rel. Est. of Morgan v. Toombs Cnty., Ga.*, 400 F.3d 1313, 1320 (11th Cir. 2005).

To establish the second element—deliberate indifference—a plaintiff must plausibly allege that the defendant: (1) "was subjectively aware that the inmate was at risk of serious harm"; (2) "disregarded that risk"; and (3) "acted with 'subjective recklessness as used in the criminal law.'" *Wade v. McDade*, 106 F.4th 1251, 1255 (11th Cir. 2024) (quoting *Farmer*, 511 U.S. at 839).[4] Subjective awareness requires that the defendant "must both be aware of facts from which the inference could be drawn

---

[4] Plaintiffs warn that some courts have interpreted *Wade* to require actual knowledge of both the risk and the harm that will result from failing to act on it. ECF 13 at 12–13. To be sure, a prison official "cannot escape liability for deliberate indifference by showing that he did not know that the complainant was especially likely to be assaulted *by the specific prisoner who eventually committed the assault*, as long as the official was otherwise aware that the victim faced a substantial risk of serious harm." *Marbury*, 936 F.3d at 1236 (citation modified). Even so, "[t]hat an official must know of a specific risk is clear from *Farmer*, where the Supreme Court's focus 'was on whether the official knew that . . . his own acts or omissions . . . put the inmate at risk, not just whether the inmate confronted a risk in the abstract.'" *McClinton v. Warden, Baldwin State Prison*, 172 F.4th 1276, 1283 (11th Cir. 2026) (quoting *Wade*, 106 F.4th at 1259).

that a substantial risk of serious harm exists, and he must also draw the inference." *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 617 (11th Cir. 2007) (citing *Farmer,* 511 U.S. at 837). The determination of whether a risk has been disregarded is objective: "[T]he [defendant] must have responded to the known risk in an unreasonable manner." *Marbury*, 936 F.3d at 1233; *Wade*, 106 F.4th at 1262. In other words, "a defendant who 'respond[s] reasonably' to a risk, even a known risk, 'cannot be found liable' under the Eighth Amendment." *Wade*, 106 F.4th at 1255 (quoting *Farmer*, 511 U.S. at 844, 837) (internal citation omitted). To allege that "the defendant acted with subjective recklessness as used in the criminal law," Plaintiffs must allege "that the defendant was subjectively aware that his own conduct put the plaintiff at substantial risk of serious harm." *Id.* (citation modified).

"Finally, the plaintiff must show a 'necessary causal link' between the [defendant's] failure to act reasonably and the plaintiff's injury." *Marbury*, 936 F.3d at 1233 (quoting *Rodriguez*, 508 F.3d at 622–23). This causal connection requires that the defendant "(1) had the means substantially to improve the inmate's safety, (2) knew that the actions he undertook would be insufficient to provide the inmate with reasonable protection from violence, and (3) had other means available to him which he nevertheless disregarded." *Nelson v. Tompkins*, 89 F.4th 1289, 1298 (11th Cir. 2024) (quoting *Rodriguez*, 508 F.3d at 622).

### A.  Officer Jones

Officer K'Asia Jones argues that the amended complaint fails to plausibly allege a failure to protect claim and that she is entitled to qualified immunity. ECF 11-1 at 6–10, 14–16. Defendants contend, and Plaintiffs do not dispute, that Jones acted within

the scope of her discretionary authority. *Id.* at 14–15; ECF 13. Thus, the burden shifts to Plaintiffs to show that Jones' actions constitute a clearly established constitutional violation.

### 1. Constitutional violation

The amended complaint plausibly alleges an Eighth Amendment failure to protect, deliberate indifference claim against Jones. According to the amended complaint, Collins faced a specific threat from the Goodfellas gang that was "extreme and posed an unreasonable risk of serious injury to his future health or safety." *Marbury*, 936 F.3d at 1233. The amended complaint alleges the Goodfellas gang, with whom Collins had prior altercations, was trying to harm Collins in G2 and that he feared for his life. ECF 7 ¶¶ 14, 17, 25. More relevant to Jones, the amended complaint plausibly alleges Collins faced a specific threat of serious injury if Jones returned Collins to G2.

The amended complaint also plausibly alleges Jones was subjectively aware of the risk facing Collins, but that she disregarded that risk, knowing her conduct placed Collins at substantial risk of serious harm. Subjective awareness requires a plausible allegation that the official was "aware that the victim faced a substantial risk of serious harm." *Marbury*, 936 F.3d at 1236. It requires "more than a generalized or abstract knowledge of a danger to the prisoner; the official must be aware of a specific risk." *McClinton*, 172 F.4th at 1283. The official "must possess enough details about a threat to enable them to conclude it presents a strong likelihood of injury, not a mere possibility." *Marbury*, 936 F.3d at 1236 (citation modified). Not "every prisoner who tells prison officials about an unspecified threat from an unspecified inmate without more is entitled to protective custody or transfer." *Id*. at 1237. On the other hand, prisoners are

"not required to identify the person who was threatening him by name, or even necessarily to give the defendants advance notice of a potential attack, so long as other facts put the defendants on notice that he faced a substantial risk of serious harm." *Id*.

Here, the amended complaint plausibly alleges Jones possessed enough details about the threat facing Collins to conclude it presented a strong likelihood of injury, not a mere possibility. Collins faced a particular threat in G2: The Goodfellas gang, with whom he had prior altercations, wanted to harm him. ECF 7 ¶¶ 14, 25. Consequently, while serving as Jones' orderly during an inmate census count, Collins hid. *Id.* ¶ 14. Jones called for Collins, continued the count in other dorms, and eventually returned to the K building to find Collins hiding. *Id.* ¶¶ 15, 16. Collins was visibly frightened and distressed, and he pleaded for his life. *Id.* ¶¶ 16–18. Collins informed Jones that he was in serious trouble, and he expressed a firm belief that if he returned to G2, he would be killed. *Id.* ¶ 17. He also told her, "I am scared for my life," and he requested protective custody. *Id.* ¶¶ 18, 19. In short, this is not a case where Collins informed Jones of an unspecified threat from an unspecified inmate without more. The context of Collins' communication matters.

Defendants argue that Plaintiffs do not sufficiently allege that Collins told Jones that the threat arose from the Goodfellas.[5] ECF 15 at 3. Assuming that is the case, the

---

[5] Arguably, the amended complaint plausibly alleges that Collins informed Jones that the Goodfellas gang threatened him. ECF 7 ¶¶ 14–19; *see FindWhat Inv. Grp.,* 658 F.3d at 1296 (the amended complaint's "reasonable inferences [] are construed in the light most favorable to the plaintiff"). Again, the amended complaint alleges that Collins faced a threat from the Goodfellas gang, and that Collins told Jones he was in serious trouble and that if he returned to G2, he would be killed. ECF 7 ¶¶ 14, 17, 18. It is reasonable to infer that Collins, when informing Jones that he would be killed if returned to G2 and explaining that he was in serious trouble, also informed Jones that the Goodfellas threatened him. *Rodriguez*, 508 F.3d at 618–19 (statement that the plaintiff informed the defendant of the "*threat made against [his] life*" gave rise to an inference that the plaintiff informed the defendant of the gang-related threat referenced in the preceding paragraph of his declaration).

amended complaint nonetheless plausibly alleges a sufficiently specific threat to Collins. That Collins took the extreme measure of hiding from Jones, that he was visibly frightened and distressed, and that he pleaded to be placed in protective custody, away from the deadly threat facing him in G2, informed Jones that Collins faced a specific threat—if she forced him to return to G2, his life would be at risk. These circumstances, when paired with Collins' statements that he feared for his life and that if returned to G2, he would be killed, are sufficient to plausibly allege subjective awareness of a strong likelihood of injury, even if Collins did not identify the Goodfellas gang by name.

The amended complaint also plausibly alleges Jones "disregarded that risk" by responding to it unreasonably. *See Wade*, 106 F.4th at 1255. According to protocol, Jones was required to take Collins to a security supervisor. ECF 7 ¶ 19. Instead, Jones, eager to leave because her shift had ended, escorted Collins back to G2, where he faced a credible threat to his life.[6] *Id.* ¶¶ 19, 20. Clearly, this was not a reasonable response. Jones' actions placed Collins at a substantial risk of serious harm, and the amended complaint plausibly alleges Jones knew of that substantial risk but returned Collins to G2 anyway.

The amended complaint also plausibly alleges causation. It alleges Jones had the means to improve Collins' safety by following protocol, knew that the actions undertaken, returning Collins to G2, would not be sufficient, and had other means available, which Jones disregarded. *See Nelson*, 89 F.4th at 1298; ECF 7 ¶¶ 14–19, 21.

---

[6] Defendants argue Jones responded to the threat reasonably, citing *Mosley v. Zachery*, 966 F.3d 1265, 1268 (11th Cir. 2020). ECF 11-1 at 9. In *Mosley*, the Eleventh Circuit explained that often a prison official responds reasonably by "taking the time to investigate the threat and look into different options all while making sure the prisoners are being supervised." 966 F.3d at 1268. That is not what the amended complaint alleges Jones did here.

This is sufficient to plausibly allege the necessary causal link between Jones' failure to act and Collins' death in G2.

Consequently, the amended complaint plausibly alleges Jones violated Collins' Eighth Amendment right.

### 2. Clearly established law

Clearly established law provided Jones notice that her alleged deliberate indifference to the threat facing Collins in G2 violated Collins' Eighth Amendment right. At the time of Collins' death, it was clearly established that "'prison officials have a duty' under the Constitution to take reasonable action 'to protect prisoners from violence at the hands of other prisoners.'" *Nelson*, 89 F.4th at 1299 (quoting *Bowen*, 826 F.3d at 1320); *see also Farmer*, 511 U.S. at 833–34 (applying the Eighth Amendment to a prisoner's deliberate indifference, failure to protect claim). Moreover, "a prison guard violates a prisoner's Eighth Amendment right when that guard actually (objectively and subjectively) knows that one prisoner poses a substantial risk of serious harm to another, yet fails to take any action to investigate, mitigate, or monitor that substantial risk of serious harm." *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1102 (11th Cir. 2014). Consequently, Jones had fair warning that escorting Collins back to G2, knowing other inmates posed a substantial risk of serious harm there, violated Collins' Eighth Amendment right.

Accordingly, qualified immunity does not bar Plaintiffs' Eighth Amendment failure to protect, deliberate indifference claim against Defendant Jones, and the motion to dismiss this claim is **DENIED**.

### B. Supervisory Defendants

"[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Keith v. Dekalb Cnty.*, 749 F.3d 1034, 1047 (11th Cir. 2014) (citation modified). "[T]he standard by which a supervisor is held liable in his individual capacity for the actions of a subordinate is extremely rigorous." *Id*. at 1048 (citation modified). A supervisor is liable under § 1983 if he or she personally participated in the unconstitutional conduct. *Id*. at 1047. Alternatively, a supervisor is liable if there exists a causal connection between the "supervisor's actions and the alleged constitutional violation." *Id*. at 1048. Causal connections can be established by widespread abuse that puts a supervisor on notice. *Id*. But such abuse "must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Id*. (citation modified).

### 1. *Personal involvement, Defendant Krause*

The amended complaint fails to plausibly allege that Lieutenant Krause is liable under § 1983 for personally participating in the alleged unconstitutional conduct. The amended complaint states that Lieutenant Krause was aware that Collins had been involved in previous altercations with gang members at Valdosta State Prison before he was transferred to Wilcox. ECF 7 ¶ 25. It also alleges Lieutenant Krause witnessed the knife fight on April 8, between Collins and another inmate, but that he did not segregate the inmates. *Id*. ¶¶ 24, 25. But the amended complaint does not plausibly allege that Krause knew that gang factions housed in G2 threatened Collins' life, or that Lieutenant Krause was aware of any continuing danger related to the knife fight. *See* ECF 7. And because the amended complaint fails to plausibly allege that Lieutenant Krause had

subjective awareness that Collins faced a substantial risk of serious injury, it does not plausibly allege that Lieutenant Krause responded to that risk with deliberate indifference.

Accordingly, Plaintiffs' failure to protect claim against Lieutenant Krause, based on a theory of personal participation, is **DISMISSED without prejudice** for failure to state a claim.

### 2. *Notice of widespread abuse, Defendants Mims, Newsome, Lott, Krause, and Mitchell*

Plaintiffs also argue the supervisory defendants had notice of widespread abuse because the DOJ report made an official finding of a "pattern of deliberate indifference" within Georgia prisons, nine inmates had died in the nine months preceding Collins' death, and the supervisory defendants knew that critical counts and rounds were not being performed due to short staffing. ECF 13 at 14–15. But Plaintiffs do not explain, nor does the amended complaint plausibly allege facts showing how this is sufficient to put the supervisory defendants on notice of a pattern of widespread abuse at Wilcox. *Id.*; ECF 7. The amended complaint does not connect specific findings in the DOJ report to Wilcox and the supervisory defendants. ECF 7. It does not allege that the nine previous inmate deaths at Wilcox resulted from constitutional violations, conferring notice of widespread abuse. *Id.* Nor does it plausibly allege that the failure to conduct required counts and rounds resulted in conditions so unsafe that they violated Collins' Eighth Amendment right.

To the extent Plaintiffs suggest Defendants were deliberately indifferent to a generalized risk of violence resulting from the failure to conduct regular counts and rounds, the burden to establish a substantial risk of serious harm based on a

-13-

generalized threat or risk is a heavy one. "Extreme levels of prisoner-on-prisoner violence may create a substantial risk of serious harm." *Johnson v. Lang*, 2022 WL 2734421, at *3 (11th Cir. July 14, 2022) (citing *Purcell*, 400 F.3d at 1320). But Plaintiffs must plausibly allege "'more than a generalized awareness of risk.'" *Marbury*, 936 F.3d at 1234. Rather, Plaintiffs must plausibly allege "'that serious inmate-on-inmate violence was the norm or something close to it.'" *Id.* (quoting *Purcell*, 400 F.3d at 1322). "[C]onfinement in a prison where violence and terror reign is actionable." *Harrison v. Culliver*, 746 F.3d 1288, 1299 (11th Cir. 2014) (quoting *Purcell*, 400 F.3d at 1320).

The amended complaint fails to plausibly allege the extreme level of prisoner-on-prisoner violence necessary to create a substantial risk of serious harm. Nine inmate deaths in nine months is significant. ECF 7 ¶ 1. But the amended complaint provides no context for the inmate deaths, and context matters. For example, the amended complaint provides no information about the size of the prison population, where the deaths occurred, or even whether the deaths resulted from inmate-on-inmate violence at all. *See* ECF 7. And although the failure to conduct sufficient counts and rounds may have created some increased risk of injury, the amended complaint does not provide facts plausibly alleging that inmate-on-inmate violence was the norm or something close to it. In other words, it does not plausibly allege that general prison conditions created a substantial risk of serious harm. Instead, the amended complaint plausibly alleges that Collins feared for his life because of a specific threat from the Goodfellas facing him in G2, not because he felt threatened by generally violent conditions at Wilcox. *Id.* ¶ 14. It is that specific threat, not a general risk of inmate-on-inmate violence, that allegedly caused Collins' death. *Id.* ¶¶ 14, 21–25.

Consequently, Collins' Eighth Amendment claim against Warden Mims, Captain Newsome, Lieutenant Lott, Lieutenant Krause, and Lieutenant Mitchell, based on notice of widespread abuse, is **DISMISSED without prejudice** for failure to state a claim.

### IV. CONCLUSION

Defendants' motion to dismiss (ECF 11) is **GRANTED in part** and **DENIED in part**.

Plaintiffs' Eighth Amendment claim may proceed against Defendant Jones, and qualified immunity is **DENIED**.

Plaintiffs' Eighth Amendment claim against Defendants Warden Mims, Captain Newsome, Lieutenant Lott, Lieutenant Krause, and Lieutenant Mitchell is **DISMISSED without prejudice**.

**SO ORDERED**, this 14th day of July, 2026.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT